Williamson vs. Sterling and others. Mr. Johnson? Good to have you here, Mr. Johnson. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. Before his trial, Mr. Williamson spent more than three years in solitary confinement. Defendants never gave him any due process not for the first solitary confinement order nor for any of the eleven subsequent orders. I think it's important to go through what each of these defendants had to do with this. Did Sheriff Carroll know this fellow was in solitary? Sheriff Carroll is the person who's in charge of the ... He's the sheriff, and he sent him to the State Department of Correction, to the SLED program. Does that automatically put him in solitary? The restrictions that are placed on pre-trial detainees who become safekeepers appear to be consistent with solitary confinement. Well, you can be in solitary, but you could also not be in solitary, right? That is not what happened here. Well, but the question is, you know, the sheriff's got to have personal involvement in this thing in order to be ... Do you think it's unconstitutional for him to refer this fellow to the SLED program? I think that if he's intending to impose greater restrictions on Mr. Williamson to punish him for alleged misconduct, then yes, I think that that would be unconstitutional. The question in this case is whether putting him in solitary is the violation of his rights, correct? Yes, the violation of his rights is that he was imposed ... Okay, but where's the evidence that the sheriff ... You're more familiar with the record than I am. Where's the evidence that the sheriff knew the guy was in solitary? I would have to look specifically for evidence of what Sheriff Carroll knew. What about the jail administrator, Charlton? Is she a party on this appeal? She is a party on this appeal. She signed the disciplinary forms in the local jail and determined the punishment there. But she didn't have anything to do with what happened at the State Department of Corrections, did she? As far as the record shows, she doesn't have any involvement once he leaves the local county detention center. And then the same thing is true of the two local prosecutors. One of them went and got some sort of an order sending this fellow there. Aren't the correct defendants in this case Sterling and Rogers? The DOC director and the manager of the Lee Correctional Facility? Your Honor, we would submit that the correct defendants are everyone who was involved in seeking and maintaining the safekeeper order. And that requires involvement ... You think everybody's got a say in all the defendants you had a case against? I think, to be clear, Director Sterling, who's in charge of the State Corrections Department ... He's the umbrella man. He's the state director. Yes, but he's also the one who's charged under Executive Order 2011 with making the safekeeping application ... He works for the governor. He works for the governor, Your Honor. And the governor issued the order. That's correct, Your Honor. And he didn't sue the governor. He did not sue the governor, Your Honor. He didn't sue the governor. Director Sterling, however, is charged with making sure that the safekeeping application ... So everybody you've sued is an underling. Well, doesn't Sterling routinely approve the renewals of inmate solitary confinement? In this case, he approved and recommended for the initial safekeeping order as well as all subsequent 11 ones, including ... Here, especially when we look at the renewals of these safekeeper orders, we know that there's a serious due process issue that perhaps these orders would not have been granted had defendants gone out and done the relevant fact-finding as required by Executive Order 2011. The governor has ordered the Director Sterling to both make sure that the application is consistent and also gather other relevant facts and make a recommendation to her. Right. I understand your point as to Sterling, but the local people, the sheriff and Ms. Charlton, they were just referring somebody that they thought had a problem. It wasn't really their duty to investigate further, was it? Their job was to hand him off, say, this guy might be a safekeeper. You need to look at it. But then it seems to me they were out of the picture. How are they proper parties in this case? Well, Sheriff Carroll, he's a proper party because he has to ... The safekeeper order is expired. You said the sheriff's a proper party? Yes, the sheriff is a proper party because he has to seek the initial one as well as maintain, as well as seek the additional renewals. Okay, so you're saying he rubber-stamped the renewals. Yes, that he wrotely sought the renewals of the safekeeper order. Yeah, but he didn't ask for solitary confinement, did he? It appears in the record that the actual placement of defendant is required by South Carolina Department of Regulations to be in an administrative segregation in a solitary environment. You're saying everybody in this SLED program gets put in solitary? In the safekeeper program? It appears so. It appears that they are confined to their cells for 23 hours a day. If you're in a safekeeper program, you're in solitary confinement. Is that what you're telling us? Where does the record show that? The record shows that at ... Or you can do it when you come back up. Okay, thank you, Your Honor. But that's pretty significant here. What about this fellow Rogers? How do you got him in this case? He was added in the, I believe, the second amendment complaint. Well, he was added in the second amendment complaint which was after the summary judgment order. That's right, Your Honor. And then it was dismissed without prejudice. And how do you have jurisdiction here? If the case in the district court is still viable as to Rogers, how is there jurisdiction in this case? The case is not over. Yes, Your Honor. Because of Rogers. Yes. Well, then how we got anything to do here? No, no, no. You have to have a final decision under section 1291 to take an appeal. I apologize, Your Honor. I misunderstood your question. Well, I'm asking a pretty significant question, I think, because it looks to me like Rogers is not a proper party here. It looks to me like the case is still viable as to him in the district court. My understanding, Your Honor, is that this court has jurisdiction because the second amendment complaint was dismissed under the initial review provisions under the PLR. It was dismissed without prejudice, reportedly. Yes. After the final order, after the so-called summary judgment order. Yes, Your Honor. So has Rogers amended his complaint? No, Your Honor. What about the Domino Sugar case? The Domino Sugar case? For this court to have jurisdiction, it has to have a final order and we're appealing from the final order that was issued. How do you have a final order if the case is not over? Well, it was dismissed with prejudice, Your Honor. It wasn't dismissed with prejudice. It was dismissed without prejudice. If I said with prejudice, I was wrong. It was dismissed without prejudice. One moment, Your Honor. It was purportedly amended after the summary judgment order and then it was dismissed without prejudice. And then it was dropped as to the other fellow that Rogers is still in it, purportedly. You still got him. Somebody's representing him. No, Your Honor. He filed a brief up here, supposedly. No, Your Honor. The case is still pending against him in the district court. My understanding is the district court admitted his judgment on July 20th, 2017, which made it a final order dismissing both the defendant, Rogers. It was dismissed without prejudice. No, I believe it's... I think it was something on the 25th of July. You looking at the docketed sheet? I'm not looking at the docketed sheet. Yeah, I looked at that myself. After July 20th, there's more stuff. Right. Because we had to amend the notice of appeal after the district court ordered its final... after the district court's judgment became final on this court... or became final on the court below. So my understanding is that we do have jurisdiction because they were dismissed with prejudice when the district court... If there's still a... If his case is still viable, is there any jurisdiction here? No, this would have to order a remand. We can't order a remand if there's no jurisdiction. We can't do anything. Then the case should be active in the district court of South Carolina below. I mean, there's no... What is it? 54B, Rule 54B appeal. Correct. We haven't sought for an interlocutory review in this case. Pardon? I apologize, Your Honor. I'm sorry. We did not seek for an interlocutory review at this time. Because our belief is that the judgment is finalized to all defendants, including the two later added... Including Mr. Rogers. Including Mr. Rogers, and I believe Ms. Eastridge, who were added in the second amended complaint. My understanding is that the court dismissed them originally without prejudice. He did not amend his complaint, and that order became final, and we amended the notice of appeal to include those. So this court does have jurisdiction. Turning to the errors of the district court's opinions here below. The district court made two legal errors that each warrant a remand. First, the court misapplied precedent when holding that pre-trial detainees are not entitled to any due process when it's for administrative reasons. Second, the court failed to consider whether the solitary confinement was excessive or arbitrary, and defendants' abuse of the safekeeper process is circumstantial evidence of the intent to punish Mr. Williamson for his alleged misconduct. The court should vacate and remand to the district court order with instructions. First, to consider whether Mr. Williamson presented any evidence that his solitary confinement was excessive and therefore intended to punish. And if the answer to that question is yes, the district court must consider whether Mr. Williamson received process under Wolf v. McDonald. If the answer to the question is no, that the solitary confinement was for administrative reasons, the district court must consider whether Mr. Williamson received process required by Hugh v. Helms. In short, Mr. Williamson received no process at all in connection with more than three years of solitary confinement. His due process rights were violated, and either error is sufficient to order a remand. Turning to the error where the court found that pretrial detainees do not have the same rights as convicted inmates for administrative segregation purposes, the district court relied on the Seventh Circuit case in Higgs v. Carver to find that there was a disagreement between the Seventh Circuit, the Second Circuit, and the Third Circuit about whether pretrial detainees received or are entitled to process for administrative segregation. To be clear, the Courts of Appeals are unanimous in holding that for administrative segregation, there is some process required for pretrial detainees prior to being put in administrative segregation. Subsequent to Higgs, the Second Circuit... How many due process claims have you got? One or two? If we look at the... If we count the orders all together... No, I'm talking about substantive due process or procedural due process. One or the other or both? We have both. We have two claims. You have two? You have a substantive claim and a procedural claim? Correct, Your Honor. Okay. Now, they say in their briefs that you don't. That you never raise a substantive claim. You only have a procedural claim. That's correct. That's what... But they're wrong in that regard. They are wrong, Your Honor. The initial brief makes clear that the substantive due process claim is that he was... is that he was punished without receiving any process. And that's the substantive... And I know it's a little tricky because we're all talking... And he was raising these things himself pro se. That's correct. And in his second amended complaint... So is your argument that we need to interpret it and favor him liberally? Well... And give you two claims in that regard? Well, he specifically alleges it in his second... in his amended complaint. If you look at paragraphs 10 and paragraphs 11 of the amended complaint, Mr. Williamson says that he was sent to the safekeeping program as... with the intent to punish him for this alleged misconduct without any process. And that makes that a substantive due process claim. And the substantive due process claim is that there's no reasonable relationship between the government conduct and a legitimate non-punitive objective. Therefore, we can infer that there's punitive intent. Is that fair to say? Uh... Yes, Your Honor. I would make one, uh... one slight addendum for it is that he believes that there's evidence that the reason that defendants gave for putting him in the safekeeping program is not for administrative reasons, but it's for to punish him for this alleged misconduct. Well, but there's either way it doesn't relate to any legitimate objective after a certain amount of time. Isn't that right? Yes, Your Honor. And here also we have evidence that not only did the solitary confinement become less the reason for holding him there was not as salient in the beginning as it was later. We also have evidence that the solitary confinement actually harmed Mr. Williamson because he became mentally ill while under their care. Do you want to use a minute of your rebuttal to talk about the issue of sovereign immunity? Sovereign immunity as prosecutorial immunity as to Solitary Miller? No, I'm talking about sovereign immunity, the court's ruling on that. The court below ruling on sovereign immunity? I'm asking you whether well, never mind, if you're not concerned, then I'm not. All right, thank you, Your Honor. Mr. Lindeman? Thank you, Your Honor. May it please the court, my name is Andrew Lindeman, I represent the appellees Brian Sterling as well as Clarence Rogers. Part of the problem in looking at this appeal is something that Judge King just touched on a few moments ago and that is whether or not you have a procedural due process claim and a substantive due process claim or a procedural due process claim alone. What procedure did this fellow have to get himself out of there? Well, first of all, our contention is that what has been brought here and what has been brought here is a juvenile detainee who has certain issues in a local detention center, in this case they were substantial in fact written as well as oral threats to kill law enforcement officers. So what process was he entitled to? He was because it was an administrative process he was not being punished. He was essentially being moved from one facility. Maybe it's not your idea of punishment but it's pretty much everybody else's I think to be sitting there for three years in solitary. Well, certainly at the point in time when he was moved he was a one charge and then pled guilty to another charge and was received time served. Well, does everybody in this safekeeper program that he's in get put in solitary? Well, you call it solitary what it is is they have they does everybody get put in solitary?   I don't think the sheriff would know or not know. Is that in this record what safekeeping is defined as? The safekeeper policy as well as the executive order are in the record. And they lay it out? For the solitary confinement? Well, what they're calling solitary confinement they are housed in a cell by themselves they are restricted from having access to other inmates because obviously other inmates are convicts. So every safekeeper is in solitary confinement. Yes. And it's no different than it's no different it's totally analogous in fact to protective custody for convicts. Except you're not getting protected from anybody except your own contact with your colleagues. Was this plan being held pre-trial solitary confinement for three years? I recognize that now the safekeeper system it's not unusual South Carolina alone safekeepers is a system used in correctional facilities across the country. Is it just pre-trial detainees? Safekeepers are pre-trial detainees. I don't think that's correct. I represent every sheriff in the state of Virginia and I can tell you that that's not what I want to do.         do. I represent every sheriff in the state of Virginia and I can tell you that that's not what I want to do.             what I want to do. I represent every     that's just what I want to do. file it. He was in correctional institution and he was being sued on some of the cold conditions. I agree. As far as Mr. Sterling goes, Mr. Sterling does not make any decisions. He's the boss. He's the director of the department. Does he work directly to the governor? He does report directly to the governor. He doesn't order the sheriff to do anything. What do these lawyers got to do with it?  prosecutor, the solicitor, and the deputy solicitor. Their counsel has a few minutes. I'll probably defer to him to speak to his role. As far as Mr. Sterling goes, he doesn't make the decision. What he essentially does is receive the application, makes certain it's in order, and makes a recommendation to the governor. He moved him around different places. He's the one that kept him in there 23 hours a day. The system places them in administrative segregation. There's no other place to put them. They have to be kept in an administrative segregation. It's no different than a protective custody situation. I didn't mean to talk over you either. I thought you were pausing there. On these 90-day renewals, is there any evidence that Williamson was notified that his attorney received any notice? I don't believe there's any notice in the record. Okay. So under South Carolina process, you're saying nobody has to receive any notice? That this just gets stamped again and again and again and again and it's okay? Well, again, it's an order issued by the governor under the executive order. The executive order does not require any type of notice. No type of notice to the pretrial detainee. That is correct. So what my client was following was state law. It was following the executive order. That's one of the things the court looks at when you're dealing with unique issues      is in place is compliant with federal law. So the executive order has the force and effect of law in place. And that play has been interpreted. The United States Supreme Court has said that as well. Talking about mistakes of law will give rise to qualified immunity. You don't get qualified immunity when it's so bad that anybody could see it's unconstitutional. Isn't that right? Isn't that what Hopefield says? I don't believe this case falls within the scope of that. He didn't get any notice on any of these renewals. There must have been a dozen of them. That sure smells of due process of the  States Supreme Court. It doesn't in this instance because he wasn't placed in there with any expressed intent to punish. There was a legitimate non-punitive reason for him being placed in safekeeper status. It was an administrative decision. We did not  answer that question. In fact, the district court said there is no guidance from the Fourth Circuit on this particular issue for her to make a decision. That was part of her reasoning in granting qualified immunity for the money damages claims. I see my time is up. I know a little bit of time is reserved for Mr. Plyler. Thank you, sir. Mr. Plyler? Yes, Your Honor. Who are you representing? Originally, I represented Appelli's Hammock and Miller, but Appelli Hammock has been dismissed already. Well, you don't represent Appelli Hammock then? Because there are no such persons. Who do you represent? Miller? Just David Miller. I thought he  deputy solicitor. Yes, Your Honor. Who represents the sheriff? Dave DeMasters at the co-counsel's table. I'm going to address the issue of personal involvement, which I think applies to the sheriff and Appelli Charlton as well. But I think it's crystal clear with the solicitor and I think it's been somewhat touched on. But the solicitor, he's claiming absolute immunity. We're claiming two things. The first argument was lack of legal  And those are two things that are being made here. The first one is what people have been conflating with the second one that shouldn't happen. The first is can he legally be moved to the South Carolina department of corrections? That's a safe keeper decision by statute. It's no different than essentially a bond hearing or bond order which allows this person to be detained. The second layer of decisions is what conditions is this person being housed under at the department of corrections. What I'm hearing on the appeal is a focus on the conditions seem to have triggered some right to due process. The evidence in the record shows that my client had no part whatsoever in deciding what conditions this person was going to be housed under. Miller's sole job was done after the initial referral to the SLED program. It's administered through the governor's office. The South Carolina law enforcement division is a separate program. It's called the safekeeper program? It's a designation of safekeeper. Under South Carolina law you can't go to the department of corrections without a conviction of more than 90 days or a safekeeper order from the governor's office. But safekeeper is a pretrial detainee in every instance? Not every instance. Technically, if we get real technical and I hate to bring this up, but the death row program is kept in solitary confinement? By decisions made through policy at the department of corrections. The focus of this argument is to focus on the fact that appellees had no part in the decision of what conditions is Williamson going to be housed under once he gets to the department of corrections. Were they ever involved in this after the original designation? I'm not sure  that was the case. The prosecutor involved in the case that is pending on his desk criminal charges that he is responsible for pursuing is seeking an order. That's what happened here with Miller. The sheriff would take on the role to a victim who is asking someone to seek this order. A decision is being made by the governor's office of whether the order should be issued. A separate layer of decision is what conditions are we going to house him under when he gets there. Mr. Lindeman has addressed the fact that there is a non-punitive interest in keeping separate inmates from convicted inmates. The department has chosen to do that through administrative segregation. I think he has already addressed that point. What I want to make sure the panel is aware of is if the panel is going to decide that the conditions triggered a due process right and that Mr. Williamson did not get due process, we still have to look at the   conditions of confinement. It has to be on the issue of what was the constitutional violation. The constitutional violation that triggers due process according to the appellant's argument is the conditions of confinement, not the decision of whether he qualifies for safe keeper or not. That's a question of whether he can legally be detained at the department instead of a local detention center. If that is true, my point on the part of these appellees is that is a decision we were not involved in. We did not make. Do you have any position on whether there is any jurisdiction for this appeal? I don't represent Mr. Rogers. I haven't looked into it. It would affect your appeal, too. We only hear appeals from final decisions. The order as I read it was decided in the PLRA's initial review process and it was dismissal without prejudice. I don't know if the district court ever had jurisdiction. What does that mean? In the context of whether your client is a proper appellee? Do you know? No, Your Honor, I don't. I know Mr. Rogers' case was over. The case against my client was over. I know it was, but that doesn't get the case over. You can have part of it over and not fill it up. Thank you again for your time. If there are no further questions. Thank you. Appreciate it. Mr. Rogers, if we agree with your position regarding the issue of punishment, that that is an issue that should not have been resolved on summary judgment, do we address the qualified immunity issue? Your Honor, I think that it's not. We can win on the remand with just the first one. I'm asking you what is your position on whether this court needs to reach it, should reach it. Please enlighten us. I think the court should reach it in this case, especially given the positions taken by defendants in their briefs in the court below and in here. What we have here is defendants saying that they needed a specific fourth circuit precedent saying that South Carolina safekeepers must receive due process before being put into solitary confinement. That's a level of specificity in particular that's unnecessary under the fourth circuit law and also under Supreme Court law. I think it would be helpful for this court to reiterate its holdings that when defendants engage in conduct that breaks bright line rules such as here where we know that pretrial detainees have the same rights as convicted criminals and convicted criminals receive due process for administrative reasons. When does it become too much? When do they conclude that his substantive due process rights have been violated by continuing him in that program? Is it after 100 days or five days or 300 days or what? So, Judge Gibney, you get a good point where the magistrate judge did not actually address that second portion of the Bell test here. The magistrate judge just said, you know, there's a threatening letter, there's a legitimate reason to put him in solitary confinement and that's all that's required versus the district court should engage in this fact-finding mission on remand so the record can be more fully developed in this case. Very quickly, I want to address Judge King's concerns. Now, you all weren't involved in it. You were a law firm. We were not involved in it in the district court at all. That's  Your Honor. He was pro se during the entirety of those proceedings? Yes, Your Honor, and for most of it he was also in prison at the time. Okay, go ahead. Sorry, just to address your issue for the jurisdictional jurisdiction when the complaint was not amended then that order would  from the district court would become a final appealable order. We'd be happy to submit very short letter briefs addressing this issue to help the court's concerns as a jurisdiction. Judge was talking about how the restrictions at Kirkland were so bad that it was difficult for her to even meet with him. So there was a bond hearing in November 2015? Yes, there was at least one bond hearing there. And bond was denied, I guess? Yes, bond was denied. Was that before the judge that he supposedly threatened? I don't know. I know the judge that was allegedly threatened held on to procedural issues for the criminal case until they could find a judge to take care of the criminal case. So the judge was apparently a binary decision that had to be made. There weren't a lot of choices. In other words, according to your opposing counsel, there were only two things that could have been done, safekeeper or local jail. Does that weaken your case at all? Your Honor, I don't think it necessarily weakens our case,    The decision to escalate him, especially if we transition to the criminal case, I don't think it necessarily weakens our case. I think it weakens the renewals of that order. Any justification for the initial upgrade to the solitary confinement certainly has diminished as time went on. Also, for them to renew the safekeeper order, there's a different standard. There's supposed to show that there were no changing conditions or good cause to keep him there. There's no evidence in the record that that occurred. As a safekeeper, he had no disciplinary actions. You're saying that every 90 days there had to be a new finding of good cause? Yes, your honor. Good cause or no changing condition. Has the record revealed  was a new finding every 90 days of good cause? No, your honor. The record shows that they were renewed each time, but it doesn't show the reason for why they were renewed. It shows that while he was a pretrial detainee at the local jail, he received three disciplinary actions and served four days in lockup. After that, his behavior improved significantly. For the second 120 days, he had no disciplinary actions and every 90 days thereafter, he still received no disciplinary actions. I know we are way over. For personal involvement issues, we said that the court assumed without deciding whether or not each defendant was personally involved. This is a very fact intensive inquiry. It should be delegated down to the district court. It's a very extensive       the   It should be delegated down to the district court. It should be delegated down to the district court. The government would not be able to make that decision without those individuals. No one thinks they make any. I make them. Your Honor, in regards to this, even the governor's executive order delegates responsibility down to director Sterling to compile the record and find relevant facts and make a recommendation to her. In doing so, the governor is shifting where should there be a hearing. Similar to magistrate judges, magistrate judges make recommendations to district courts that have to be adopted by district courts. They still allow for process at that point. That's what we're saying here. If we were to send this thing back, hypothetically, would he be pro se again? He comes up here with one of the great law firms of the world handling this appeal. If we were to remand it, he's pro se. I can't say at this point as to whether the conversation would continue. I know we're handling this pro bono. Should the court decide that a remand is necessary, the firm will have to make a decision at that time. We appreciate your efforts here. Thank you. That goes for everybody on both sides. I should say that. You've all done a good job. We'll come down in Greek council and then we'll take a short break. Is that fair? This is all before you. Take a brief recess.
judges: Robert B. King, Barbara Milano Keenan, John A. Gibney Jr.